# In the United States Court of Federal Claims

No. 25-248
(Filed Under Seal: September 18, 2025)
Reissued: September 29, 2025[1]

|  |  |
|---|---|
| UNITED AERO GROUP, LLC, dba ARISTA AVIATION SERVICES, LLC, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) |
| Defendant. | ) ) ) |

*W. Brad English, Emily J. Chancey, Taylor R. Holt, Hunter M. Drake, Holdon D. Guy*, Maynard Nexsen PC, Huntsville, AL, for plaintiff.

*Elizabeth M.D. Pullin*, United States Department of Justice, Civil Division, Washington, D.C., for defendant.

**OPINION AND ORDER**

*SMITH*, **Senior Judge**

This post-award bid protest comes before the Court on Defendant's Motion to Dismiss. Plaintiff, United Aero Group, LLC dba Arista Aviation Services, LLC ("Arista"), challenges the decision of the United States Department of State (the "Agency") directing third-party awardee AAR Government Services, Inc. ("AAR") to perform program maintenance work on two UH-60 Black Hawk helicopters under existing an existing task order. *See generally* Plaintiff's Amended Complaint, ECF No. 26 [hereinafter Am. Compl.].

Arista's first claim alleges that the Agency violated the Competition in Contracting Act ("CICA"), 41 U.S.C. § 3301, by directing AAR to perform maintenance work on the two helicopters at the Agency's facility in Sanford, Florida. According to Arista, the Agency "exceeded the express limitations of AAR's IDIQ" because AAR's IDIQ and subsequent task order limited the locations in which program maintenance work could be performed. Am. Compl. ¶¶ 39–43. Arista second claim alleges that the Agency failed to perform a "Rule of Two" analysis

---

[1] An unredacted version of this opinion was issued under seal on September 18, 2025. The parties responded to the Court's call for redactions, and this decision reflects the Court's ruling on plaintiff's proposed redactions.

when it directed AAR to perform the challenged work under AAR's existing task order. *Id*. ¶¶ 44–51.

In response, defendant argues that Arista's first claim falls outside of the Court's bid-protest jurisdiction because it challenges "the issuance or proposed issuance of a task order, and such a challenge is barred" under federal law. Def.'s Mot. at 10. Defendant further argues that the helicopter maintenance work placed on AAR's task order "was within the scope of the [AAR's task] order" because the IDIQ encompassed the challenged services and "the labor hour order already included sufficient labor hours to permit AAR to perform the services without increasing the labor hours." *Id*. at 6–7. Defendant also seeks dismissal of Arista's second claim on the grounds that a Rule of Two analysis neither applies to multiple awards contracts nor "administration decisions of existing task orders." *Id*. at 8–9.

For the reasons set forth below, the Court grants defendant's Motion to Dismiss, ECF No. 25, and dismisses plaintiff's complaint without prejudice.

## BACKGROUND

A.  **The IDIQ Contracts**

The Agency's Bureau for International Narcotics and Law Enforcement Affairs, Office of Aviation provides worldwide aviation support for the eradication and interdiction of illicit drugs, training of contractor and host nation personnel, embassy support, movement of personnel and equipment, reconnaissance, personnel recovery, medical evacuation, security of personnel and equipment, and convoy escort. Am. Compl. ¶ 20. As part of this mission, the Agency maintains a fleet of aircraft that require routine maintenance, repairs, upgrades, overhauls, storage, and inspections. *Id*. The Agency utilizes multiple aircraft maintenance facilities, two of which are relevant to this dispute: a hangar located at the Orlando Sanford International Airport in Sanford, Florida (the "Sanford Hangar") and a hangar located at the Patrick Space Force Base in Cocoa Beach, Florida (the "PSFB Hangar"). *Id*. The PSFB Hangar is "a full service facility capable of accommodating all levels of program maintenance, material maintenance, and depot activities." *Id*. ¶ 21. The Sanford Hangar is "primarily used as a storage facility for aircraft and equipment, and as an emergency operations site for hurricanes and other disaster events." *Id*.

The Agency relies on various contract vehicles to fulfill its aviation support mission, two of which are discussed herein. The "first and most comprehensive contract" is with AAR. Declaration of John Menard, ECF No. 25-1 at 2 [hereinafter Menard Decl.]. In September of 2016, the Agency awarded AAR with IDIQ Contract No. SAQMMA16D0136 (the "AAR IDIQ"). Appendix A to Am. Compl., ECF No. 26-1 at 2–97 [hereinafter Appendix A]. The AAR IDIQ contemplates that AAR would provide "worldwide aviation support services," including "all levels of helicopter maintenance services (to include depot)." *Id*. at 25. As to the location at which the work would be performed, the statement of work accompanying the IDIQ solicitation states that "[t]he place of performance will be specified in each task order." *Id.* at 31. That document further explains that "[o]perations are currently performed in Central Florida and [various countries]," but "[a]dditional worldwide missions *and locations* may be added throughout the contract period of

performance." *Id*. at 31 ("Place of Performance") (emphasis added)). The AAR IDIQ has a ten-year period of performance and is in its sixth year. Am. Compl. ¶ 23.

The second contract is single award IDIQ Contract No. 19AQMM23D0051 for helicopter maintenance services that was awarded to Arista in May of 2023 (the "Arista IDIQ"). Am. Compl. ¶¶ 19, 25; *see also* ███████ Decl., ECF No. 26-4 at 5–67. Arista's contract has a five-year period of performance and is in its second year. Menard Decl. at 2.

### B. The Task Orders

In May of 2024, the Agency awarded AAR with Task Order 19AQMM24F0983 (the AAR Task Order") under the AAR IDIQ. ECF No. 25-2 at 5–8 [hereinafter AAR Task Order]. The AAR Task Order provides that AAR would supply maintenance services "on all aircraft, aircraft components and sub components and aircraft related equipment." *Id*. at 6 ("Major Requirement"). The AAR Task Order indicated that program maintenance would take place at the PSFB Hangar. *Id*. However, the statement of work accompanying the AAR Task Order included a section titled "scope of work—maintenance" making clear that "[q]uantities, models, *and locations* of aircraft and missions systems *will change* during this contract" and that "[t]he contractor will be required to change with these fleet changes." ECF No. 26-3 at 22 (emphasis added) [hereinafter "AAR PWS"].

In October of 2024, the Agency awarded Arista with Task Order 19AQMM25F007 (the "Arista Task Order"). Am. Compl. ¶ 28; *see also* ECF No. 26-4 at 133–143. The Arista Task Order was a sixty-day assignment under which Arista would perform a site assessment of the Sanford Hangar to determine if any changes were needed should the Agency elect for Arista to perform helicopter maintenance work on its aircraft fleet.

On November 20, 2024, Arista presented the Agency with a report of its site assessment of the Sanford Hangar. *Id*. ¶ 32. The report identified a series of "health and safety concerns" at the Sanford Hangar that needed to be addressed before Arista could perform the requested maintenance work at the facility. *Id*. ¶ 29. Six days later, the Agency terminated the Arista Task Order for convenience. *Id*. ¶ 33. The termination notice stated that "[a]ll work related to the efforts under [the Arista Task Order] and modifications inclusive of all [statement of work] requirements is terminated for the convenience of the Government." *Id*. Notably, "Arista does not challenge the Agency's decision to terminate Arista's Task Order." *Id*. ¶ 33 n. 6.

After terminating the Arista Task Order, the Agency requested a proposal from AAR to perform helicopter maintenance work at the Sanford Hangar. *Id*. ¶ 34. AAR apparently expressed its view that the work could be performed under the existing AAR Task Order. *Id*. On February 11, 2025, the Agency issued a technical direction authorizing AAR to perform the maintenance work at the Sanford Hangar under the AAR Task Order. *Id*. Since then, Arista's personnel have observed "AAR employees performing depot level and other maintenance on" the UH-60 helicopters "inside the Sanford hangar." *Id*. ¶ 35.

**PROCEDURAL HISTORY**

On February 11, 2025, Arista filed its original complaint with this Court alleging that the Agency violated the open competition requirements under the Competition in Contracting Act ("CICA") by adding out-of-scope helicopter maintenance work to the AAR Task Order. Arista further alleged that the Agency violated the Rule of Two. On April 9, 2025, defendant filed a motion seeking dismissal of the complaint. *See generally* Defendant's Motion to Dismiss the Complaint, ECF No. 25 [hereinafter Def.'s Mot.]. On April 23, 2025, Arista filed an Amended and Restated Complaint asserting the identical claims and substantially similar factual allegations. *See generally* Amended and Restated Complaint, ECF No. 26 [hereinafter Am. Compl.].[2] On the same date, Arista also filed a Response to Defendant's Motion to Dismiss. *See generally* Plaintiff's Response to Defendant's Motion to Dismiss, ECF No. 27 [hereinafter Pl.'s Resp.]. On April 30, 2025, defendant filed Defendant's Reply in Support of Its Motion to Dismiss. *See generally* Defendant's Reply in Support of Its Motion to Dismiss, ECF No. 28 [hereinafter Def.'s Reply]. On May 9, 2025, plaintiff filed, with the leave of the Court, a limited sur-reply objecting to certain arguments raised in defendant's reply brief. *See generally* Plaintiff's Sur-Reply in Support of its Objection to Defendant's Motion to Dismiss, ECF No. 32 [hereinafter Pl.'s Sur-Reply]. On July 17, 2025, the Court held oral argument.

## STANDARD OF REVIEW

When considering a motion to dismiss for lack of subject-matter jurisdiction, the Court will accept as true all factual allegations the non-movant made and draw all reasonable inferences in the light most favorable to that party. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). However, the plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence and "cannot rely merely on the allegations in the complaint if jurisdiction is challenged." *Power Density Sols. LLC v. United States*, 159 Fed. Cl. 208, 214 (2022). If a motion to dismiss challenges the jurisdictional facts alleged in the complaint, the Court can look beyond the complaint's allegations to determine whether subject-matter jurisdiction exists. *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993); *Moyer v. United States*, 190 F.3d 1314, 1318 (Fed. Cir. 1999).

## DISCUSSION

The issues presented before the Court are whether (1) a jurisdictional basis exists for this Court to hear Arista's claims challenging the award of work to AAR under the AAR Task Order; and (2) the Agency was required to perform a Rule of Two analysis when it elected to place the helicopter maintenance work on the existing AAR Task Order. The Court finds that it lacks subject-matter jurisdiction over Arista's first claim and that Arista's second claim predicated on the alleged failure to perform a Rule of Two analysis fails as a matter of law because the Agency

---

[2] A motion to dismiss is typically rendered moot by the filing of an amended complaint because the amendment supersedes the original complaint. However, courts have the discretion construe a motion to dismiss to apply to an amended complaint when the amended complaint "contain[s] the same claims and substantially the same factual allegations as the original." *Kalos v. United States*, 368 F. App'x 127, 131–32 (Fed. Cir. 2010)."). The Court does so here.

was not required to perform a Rule of Two analysis in connection with the technical direction it issued to AAR for in-scope services under an existing task order.

### A. The helicopter maintenance work at the Sanford Hangar was within the scope of the AAR IDIQ and Task Order.

The Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, 110 Stat. 3870 (1996), provides the Court with "jurisdiction to render judgment on an action by an interested party objecting to": (1) "a solicitation by a Federal agency for bids or proposals for a proposed contract," (2) "a proposed award or the award of a contract," or (3) "any alleged violation of a statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). However, the Federal Acquisition Streamlining Act of 1994 ("FASA") bars protests that are "in connection with the issuance or proposed issuance of a task or delivery order." *SRA Int'l, Inc. v. United States*, 766 F.3d 1409, 1413 (Fed. Cir. 2014) (quoting 10 U.S.C. § 3406(f)(1)).

An exception to the FASA bar exists where the task or delivery order "increases the scope, period, or maximum value of the contract under which the order is issued." 41 U.S.C. § 4106(f)(1)(A). A modification to an order increases the scope of the underlying contract— triggering CICA's statutory competition requirements—"when the contract as modified materially departs from the scope of the original procurement." *AT&T Commc'ns, Inc. v. Wiltel, Inc.*, 1 F.3d 1201, 1205 (Fed. Cir. 1993). The court's task is to determine whether potential bidders would have expected the modification to fall within the underlying contract's changes clause by analyzing "the scope of the entire original procurement in comparison to the scope of the contract as modified." *Id*. The breadth of the underlying contract is relevant because "a broad original competition may validate a broader range of later modifications without further bid procedures." *Id*. If an exception to the FASA bar does not apply, the Court lacks jurisdiction and must dismiss the complaint under Rule 12(h)(3) of the Rules of the Court of Federal Claims ("RCFC"). *E.g.*, *22nd Century Techs., Inc. v. United States*, 57 F.4th 993, 999 (Fed. Cir. 2023).

Arista argues that the above exception to the FASA bar applies because the helicopter maintenance work being performed by AAR at the Sanford Hangar falls "outside the scope of AAR's IDIQ, as well as AAR's Task Order" because the performance work statement accompanying the AAR IDIQ "was explicit about the work AAR could perform at each location." Am. Compl. ¶¶ 39–40. In Arista's view, the AAR Task Order limited the locations in which program maintenance work could take place to Panama, Costa Rica, Peru, Iraq, and the PSFB Hangar. *Id*. ¶ 40. Thus, Arista contends that the challenged work that AAR performed at the Sanford Hangar "exceeded the scope of AAR's IDIQ contract and the task order," *Id*. ¶ 13, triggering the out-of-scope exception to the FASA bar and CICA's statutory mandate that the Agency "conduct[] a procurement for property or services" to "obtain full and open competition though the use of competitive procedures" under CICA. § 3301(a)(1).

The Court disagrees with Arista and finds that it does not possess subject-matter jurisdiction to hear Arista's first claim for relief because that claim is "in connection with the

issuance or proposed issuance of a task or delivery order" and therefore prohibited by the FASA bar. As detailed below, the Agency's decision to permit AAR to perform the helicopter maintenance work at the Sanford Hangar did not exceed the scope of either the AAR IDIQ or AAR Task Order, meaning that CICA's statutory requirement of open competition was not triggered by the Agency's actions.

Although the statement of work accompanying the AAR IDIQ states that "[t]he place of performance will be specified in each task order," *see* Appendix A at 31, the same section provides that permissible locations include "Central Florida, Colombia, Peru, Pakistan, Afghanistan, and Iraq." *Id*. at 31. The Sanford Hangar—located only twenty-five miles from Orlando—certainly qualifies as "Central Florida." *See, e.g.*, *Stanley v. City of Sanford, Fl.*, 145 S. Ct. 2058 (2025); *United States v. Bello*, 194 F.3d 18, 23 (1st Cir. 1999) (quoting *United States v. Piggie,* 622 F.2d 486, 488 (10th Cir. 1980)) ("Geography has long been peculiarly susceptible to judicial notice for the obvious reason that geographic locations are facts which are not generally controversial.").

Additional language found in the various contract documents further bolsters the Agency's position that the maintenance work performed at the Sanford Hangar was within the scope of the AAR IDIQ. For instance, the AAR IDIQ's statement of work provides that "[a]additional worldwide missions *and locations* may be added throughout the contract period of performance." Appendix A at 31 ("Place of Performance") (emphasis added)). Thus, the Sanford Hangar is within the geographical scope of the AAR IDIQ.

The same is true for the AAR Task Order. The statement of work accompanying that task order similarly provides that "[q]uantities, models, *and locations* of aircraft and missions systems *will change* during this contract" and that "[t]he contractor will be required to change with these fleet changes." AAR PWS at 22 (emphasis added). Taken together, the terms of the AAR IDIQ and AAR Task Order provided fair warning to potential bidders that changes to the fleet and the location of operations were possible to meet the changing needs of the Agency's global aviation support mission. *S. Cal. Edison v. United States,* 58 Fed. Cl. 313, 321 (2003) ("Contract interpretation is a matter of law and thus may be addressed by the Court in resolving a motion to dismiss.").

Likewise, the helicopter maintenance services that AAR is performing at the Sanford Hangar also do not represent the addition of new services to those originally competed for under the solicitation. The AAR IDIQ encompasses "all levels of helicopter maintenance services (to include depot)" covering "all aircraft, aircraft components and sub components and aircraft related equipment." Appendix A at 25. Clearly, the work that Arista now challenges—"depot level and other maintenance," Am. Compl. ¶ 35—fits within the broad scope of work contemplated by the AAR IDIQ. *Wiltel, Inc.,* 1 F.3d at 1205–06 ("In sum, this contract's breadth suggests that a broad range of modifications would fall within the scope of its changes clause" because "a broad original competition may validate a broader range of later modifications without further bid procedures."). Finally, the additional work contemplated by the Agency's technical direction to AAR did not increase the number of authorized labor hours provided for under the AAR Task Order. Def.'s Mot. at 4, 7.

Based on the above, the Court is without power to entertain Arista's first claim because that claim cannot survive the FASA bar prohibiting bid-protest challenges "in connection with the issuance or proposed issuance of a task or delivery order." The Agency's decision to permit AAR to perform the helicopter maintenance work at the Sanford Hangar did not exceed the scope of the AAR IDIQ, meaning that CICA's statutory requirement of open competition was not triggered by the Agency's actions. The Court accordingly dismisses Arista's first claim for lack of subject-matter jurisdiction.

**B. The Rule of Two does not apply to an executive agency's technical direction to perform in-scope services under an existing task order.**

Arista also claims that "the Agency violated the Rule of Two by moving work on Arista's small business set aside contract to AAR's large business vehicle." Am. Compl. ¶ 14. The Rule of Two sets forth the conditions under which procurements should be set aside for small businesses. FAR 19.502–2(b), the primary source of the Rule of Two, provides "[t]he contracting officer shall set aside any acquisition over $150,000 for small business participation when there is a reasonable expectation that: (1) Offers will be obtained from at least two responsible small business concerns; and (2) Award will be made at fair market prices." 48 C.F.R. § 19.502–2(b). At the set aside stage, the "Rule of Two" regulations implement the twin goals of awarding a fair proportion of contracts to small businesses and the requirement that the award be made at a fair market price.

As Arista tells it, the Rule of Two applies and thus "the Agency should have determined whether two small businesses were capable of performing the required work before it moved the work to a large business contract." *Id*. ¶ 49. Further, "[h]ad the Agency performed a Rule of Two analysis, it would have found two responsible, small businesses capable of performing the work at a fair market price." *Id*. ¶ 50. "As a small business with vast experience performing aircraft maintenance and repairs, Arista would have competed for this work and stood a substantial chance of award." *Id*. ¶ 51.

In response, the Agency argues that "Arista's challenge is a challenge to [the Agency's] administration of an existing task order, and, in any event, is barred under the FASA task order bar." Def.'s Mot. at 2. The Agency primarily argues that it "was not poised to award a task or delivery order, but instead direct[ed] in scope services to a performing contractor." *Id*. at 9. The Agency also contends that the helicopter maintenance work that Arista now challenges constitutes a "technical direction" that is "reserved to the contracting officer" and is thus immune from a Rule of Two analysis. Def.'s Reply at 4.

Arista is wrong. Critically, the Agency's issuance of a technical direction to AAR did not amount to a modification. Rather, the Agency directed AAR to perform the services at the Sanford Hangar under the existing AAR Task Order "without adding additional manpower or funds." Menard Decl. at 5. Because the challenged activity did not rise to the level of a modification, the Court holds that the Agency was not required to conduct a separate Rule of Two analysis.

- 8 -

## **CONCLUSION**

For the reasons set forth above, defendant's Motion to Dismiss, ECF No. 25, is **GRANTED**. Arista's Amended Complaint, ECF No. 26, is **DISMISSED WITHOUT PREJUDICE**. The clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge